UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
MONICA AVILA-BLUM,                            :
                                              :
                    Plaintiff,                :
                                              :   05 CV 6435 (VM) (AJP)
         - against -                          :
                                              :   Statement Pursuant
CASA DE CAMBIO DELGADO, INC.,                 :   to Local Rule 56.1
DELGADO TRAVEL AGENCY, INC. &                 :
HECTOR DELGADO,                               :   **ECF CASE**
                                              :
                    Defendants.               :
---------------------------------------------------------------- x

    Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, and in support of its motion for summary judgment against plaintiff Monica Avila-Blum ("Avila" or "Plaintiff"), defendants Casa de Cambio Delgado, Inc., Delgado Travel Agency, Inc., and Hector Delgado (collectively, "Delgado Travel" or "Defendants"), by their undersigned counsel, Kramer Levin Naftalis & Frankel LLP, respectfully provide the following statement of material facts as to which it is submitted there is no genuine issue to be tried.

**Monica Avila-Blum's Employment Background**

    1.  Monica Avila-Blum was hired to be a cashier for Casa de Cambio, a subsidiary of Delgado Travel, in March 2001. (Declaration of Robert N. Holtzman, dated August 18, 2006 ("Holtzman Decl.") Exh. A (Complaint ¶ 13); Deposition of Monica Avila-Blum, dated June 19, 2006, at 10:07 a.m. ("Avila-Blum Tr. Volume I") at 67, attached as Holtzman Decl. Exh. C).

KL3:2535208.1

2. The main office of Delgado Travel is located at 79-08 Roosevelt Avenue in Jackson Heights, Queens and consists of two floors. (Deposition of Hector Delgado, dated June 21, 2006 ("H. Delgado Tr.") at 118-19, attached as Holtzman Decl. Exh. E).

3. Hector Delgado, the President of Delgado Travel, has an office at Delgado Travel's main office on the second floor. (H. Delgado Tr. at 117, 119).

4. Along with other employees of the company, the Casa de Cambio cashiers work on the first floor. (Avila-Blum Tr. Volume I at 75-76).

5. Plaintiff worked in the main office of Delgado Travel during the majority of her employment period. (Holtzman Decl. Exh. A (Complaint ¶ 13); Avila-Blum Tr. Volume I at 67-70).

6. Beginning in late 2001, Plaintiff assisted Hector Delgado with various tasks, asserting that she opened his mail, answered phones, kept track of his messages, and reminded him of appointments. (Holtzman Decl. Exh. A (Complaint ¶ 32); Avila-Blum Tr. Volume I at 78-79; H. Delgado Tr. at 156, 279-80).

7. During that time, Plaintiff also maintained her role as a cashier for Casa de Cambio and sometimes worked as a receptionist. (Avila-Blum Tr. Volume I at 76-78).

8. Plaintiff's employment at Delgado Travel ceased in late November 2004. (Holtzman Decl. Exh. A (Complaint ¶ 13)).

9. Since then, Plaintiff testified that she has "not [done] much" to procure subsequent employment, has "[n]ot exactly [been] employed," and has never worked full-time. (Avila-Blum Tr. Volume I at 10-18).

2

**Facts Relating to Plaintiff's FMLA Claims**

10. On September 25, 2004, Plaintiff was notified by her endocrinologist, Dr. Martin Nydick ("Dr. Nydick"), that tests had confirmed her diagnosis of hyperthyroidism, or Grave's disease. (Holtzman Decl. Exh. A (Complaint ¶ 17); Holtzman Decl. Exh. G at 05/6435 0005; Holtzman Decl. Exh. H at Nydick 0005).

11. Dr. Nydick recommended that Plaintiff undergo radioactive iodine ("RAI") treatment, but also provided her with the option of using antithyroid medication (Tapazole or PTV). (Holtzman Decl. Exh. G at 05/6435 0005).

12. Dr. Nydick explained to Plaintiff that using the medication only gave her about a 25% chance of curing the condition after 18 months and warned her about the medication's potential side effects. (Holtzman Decl. Exh. G at 05/6435 0005).

13. At an October 22, 2004 appointment, Dr. Nydick again advised Plaintiff that she had to choose between the two treatment options available to her: RAI treatment or continuing treatment with either Tapazole or PTV. (Holtzman Decl. Exh. H at Nydick 0005; Avila-Blum Tr. Volume I at 37-38).

14. Plaintiff told Dr. Nydick at that appointment that she would "let [him] know" her decision. (Holtzman Decl. Exh. H at Nydick 0005).

15. Plaintiff claims that at some point, Dr. Nydick explained that RAI treatment would require her to avoid close contact with others for a period of at least three days or up to one week. (Holtzman Decl. Exh. A (Complaint ¶ 22); Holtzman Decl. Exh. J at AVILA D 1074).

16. In a later appointment, on November 22, 2004, Dr. Nydick again explained that the Tapazole treatment had side effects, and there was only a 25% cure rate. (Holtzman Decl. Exh. H at Nydick 0005).

17. Nevertheless, on November 22, 2004, Plaintiff advised Dr. Nydick that she "was [v]ery worried about RAI" and "[w]ants to take pills." (Holtzman Decl. Exh. H at Nydick 0005).

18. Dr. Nydick prescribed Tapazole at that appointment. (Holtzman Decl. Exh. H at Nydick 0005).

19. To this date, Plaintiff has not undergone RAI treatment, and is still taking Tapazole. (Avila-Blum Tr. Volume I at 5, 38-39).

20. Plaintiff claims that she made a written request to Delgado Travel for leave to undergo the RAI treatment. (Holtzman Decl. Exh. A (Complaint ¶¶ 22-23)).

21. Plaintiff produced an unsigned letter dated November 17, 2004 in which she specified that she would need to be out of the office or arrive at work late on particular dates in late November and early December due to the RAI treatment. (Holtzman Decl. Exh. J at AVILA D 1074).

22. The letter relates only a request for leave to undergo the RAI treatment. (Holtzman Decl. Exh. J at AVILA D 1074).

23. The letter does not reference any other time off from work that Plaintiff might require need due to her thyroid condition. (Holtzman Decl. Exh. J at AVILA D 1074).

24. Specifically, the contents of the alleged letter indicate that Plaintiff advised Mr. Delgado that she would be undergoing RAI treatment on Friday, November 26, 2004, and requested permission not to come to work on November 26, 2004, November 27, 2004

4

KL3:2535208.1

and November 28, 2004. Plaintiff also requested permission to arrive at work late on November 29, 2004 and November 30, 2004 and December 2, 2004 and December 3, 2004 because she would be receiving additional RAI treatments at 9:00 a.m. on those days. (Holtzman Decl. Exh. J at AVILA D 1074).

25. Dr. Nydick's medical records show that he did not see or speak with Plaintiff between her appointment on November 22, 2004 and her subsequent appointment in May 2005, at which time he "bawled her out" for not contacting him during that entire time period. (Holtzman Decl. Exh. H at Nydick 0004-5).

26. The medical records of Plaintiff's regular physician, Dr. Diana Santini ("Dr. Santini") indicate that she did not see Plaintiff between an August 17, 2004 appointment and a subsequent appointment on February 22, 2005, when Plaintiff received treatment for bunyons. (Holtzman Decl. Exh. I).

27. There are no notations in Dr. Santini's records indicating that Plaintiff scheduled appointments for RAI treatment. (Holtzman Decl. Exh. I).

28. Likewise, there are no notations in Dr. Nydick's records indicating that Plaintiff scheduled appointments for RAI treatment. (Holtzman Decl. Exh. H).

29. Plaintiff did not report to work on Friday, November 26, 2004 and Sunday, November 28, 2004, and claims that she called the office to inform them that she was sick.[1] (Avila-Blum Tr. Volume I at 44, 47).

30. Plaintiff claims that she informed her supervisor that she "was ill and . . . was not going to be able to come into work" on Friday. (Avila-Blum Tr. Volume I at 44-45).

---

[1] Plaintiff's scheduled day off that week was Saturday, November 27, 2004. (Avila Volume I Tr. at 47).

5

31.    On Sunday, Plaintiff claims that she told the office manager that she was not coming in because she was sick. (Avila-Blum Tr. Volume I at 47-48).

32.    Plaintiff did not specify on either day why she was calling in sick. (Avila-Blum Tr. Volume I at 44-45, 47-48).

**Facts Relevant to Plaintiff's Sexual Harassment Claims**

33.    Plaintiff alleges that she was subjected to sexual harassment and retaliated against during the course of her employment at Delgado Travel. (Holtzman Decl. Exh. A (Complaint ¶¶ 32-50)).

34.    Plaintiff alleges that Mr. Delgado touched her without consent in Central Park on the first week that Plaintiff began working for Mr. Delgado in December 2001. (Avila-Blum Tr. Volume II at 75-78).

35.    Plaintiff alleges that Mr. Delgado touched her without consent in August 2002 on a boat in Freeport, New York. (Avila-Blum Tr. Volume II at 55-61).

36.    Plaintiff alleges that Mr. Delgado touched her without consent in 2002 in his office. (Avila-Blum Tr. Volume II at 72-74).

37.    Plaintiff alleges that Mr. Delgado touched her without consent in January 2004 at a party for his birthday. (Avila-Blum Tr. Volume II at 27-31).

38.    Plaintiff alleges that Mr. Delgado touched her without consent in the beginning of 2004 in his office. (Avila-Blum Tr. Volume II at 114-116).

39.    Plaintiff also alleges that Mr. Delgado "always" touched her in the office. (*See, e.g.*, Avila-Blum Tr. Volume II at 83, 91, 125).

40.    Plaintiff has failed to identify any specific incident of harassment or retaliation that allegedly occurred in the last two months of her employment.

41. Months after her employment with Delgado Travel ceased, Plaintiff filed a charge with the EEOC, asserting claims under Title VII. (Holtzman Decl. Exh. K).

42. The charge was stamped "received" by the EEOC on July 29, 2005. (Holtzman Decl. Exh. K).

43. Plaintiff thereafter amended her Complaint in this action – which had been filed before the EEOC charge was brought – to add a claim under Title VII. (Holtzman Decl. Exh. A).

44. Among other defenses, Defendants asserted an affirmative defense that Plaintiff's Title VII claims were barred by the statute of limitations. (Holtzman Decl. Exh. B (Answer ¶ 73)).

45. Plaintiff produced a journal which she claims she kept while employed by Delgado Travel. (Holtzman Decl. Exh. L; Avila-Blum Tr. Volume II at 45-46).

46. The thirty-five page journal contains no references to any incidents of sexual harassment or retaliation after October 2, 2004. (Holtzman Decl. Exh. L).

47. There is only one entry in the journal for the year 2004, as compared to multiple entries for the years 2002 and 2003. (Holtzman Decl. Exh. L, at AVILA D 202-03).

KL3:2535208.1

48.     The 2004 entry does not reference any alleged sexual harassment or retaliation occuring after October 2, 2004.  (Holtzman Decl. Exh. L at AVILA D 203).

Dated:  August 18, 2006

                                  KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                  By:     s/ Robert N. Holtzman
                                            Robert N. Holtzman (RH-9525)
                                            Rachel M. Manne (RM-7151)
                                            Jennifer Haber (JH-6571)
                                            1177 Sixth Avenue
                                            New York, New York 10036
                                            (212) 715-9100

                                            Attorneys for Defendants

                                            DREIER LLP
                                            Jeffrey A. Mitchell (JM-5323)
                                            M. Alexis Pollock (MP-4425)
                                            499 Park Avenue
                                            New York, New York 10022
                                            (212) 328-6100

                                            Attorneys for Defendants

Of Counsel:
Gerald L. Shargel, Esq.
Law Offices of Gerald L. Shargel

8